IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SUSAN WELCH KELLY, *et al.*, | : |
| Plaintiffs, | : Case No. 2:14-cv-1359 |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Vascura |
| BARE ESCENTUALS BEAUTY, INC., *et al.*, | : |
| Defendants. | : |

**OPINION & ORDER**

This matter is before the Court on Defendant Bare Escentuals Beauty, Inc.'s ("Bare Escentuals") Motion for Summary Judgment. (Doc. 44.) For the reasons discussed below, the Court **DENIES** the motion.

## I. BACKGROUND

### A. Factual Background

On September 22, 2012, Plaintiff Susan Kelly visited the Bare Escentuals store in Polaris Fashion Place to return a purchase. (Am. Compl., Doc. 3, ¶ 7; Kelly Dep., Doc. 37, at 79.) While so doing, Ms. Kelly began speaking with one of Bare Escentuals' employees, Kami, who asked if she had time for a makeover. (Doc. 3 ¶ 7.) Ms. Kelly agreed to receive a makeover. (*Id.*) According to Plaintiffs, the makeup products that Kami applied during Ms. Kelly's makeover were sitting out on the counter, open. (*Id.* ¶ 9; *see also* Doc. 37 at 77.) These products were used both for makeovers and as customer samples. (*See* Doc. 3 ¶ 9.) Plaintiffs claim that Kami applied the makeup using non-disposable applicators, some of which came from Kami's makeup belt, "which contained all of the various brushes used for different products." (Pls.' Mem. Opp'n to Def.'s Mot. Summ. J., Doc. 47, at 4.) When Kami was done applying a product,

she would either return the applicator to the makeup container and return the product to the counter for common use, or place the brush back in her makeup belt. (Doc. 37 at 74, 137.) Kami also applied certain products to Ms. Kelly's face using her fingers, and without applying hand sanitizer. (*See id.* at 137.)

Ms. Kelly developed a sty in her eye approximately two days after her visit to the Polaris Bare Escentuals store. (Doc. 3 ¶ 11.) Several days later, Ms. Kelly saw the nurse practitioner at her primary care doctor's office and received a prescription for the sty. (*Id.* ¶ 12.) On October 6, 2012, Ms. Kelly entered the emergency room at Van Wert Community Hospital, having developed boils on her chin and forehead, and was again prescribed antibiotics. (*See id.* ¶¶ 12–13.) Shortly thereafter, Ms. Kelly returned to her primary care physician, who took specimens of the boils for laboratory cultures. (*Id.* ¶ 15.) These cultures came back positive for Methicillin Resistant Staph Aureus ("MRSA"). (*Id.* ¶ 16.) Ms. Kelly returned to the emergency room several weeks later, complaining of bodyaches, chest pressure, and chills. (Ulrich Dep., Doc. 43, at 45–46.) The emergency room physician also cultured the boil on Ms. Kelly's forehead, which again tested positive for MRSA. (*Id.* at 47–48.)

Ms. Kelly's infectious disease specialist, Dr. Kurt Stevenson of The Ohio State University Medical Center, began treating her for MRSA in February 2013. (Doc. 3 ¶ 17.) At her initial visit, Dr. Stevenson took Ms. Kelly's medical history, reviewed Ms. Kelly's medical records, and heard from Ms. Kelly about her makeover at Bare Escentuals. (*See* Stevenson Dep., Doc. 40, at 46.) In taking Ms. Kelly's medical history, Dr. Stevenson learned from Ms. Kelly that—to her knowledge—she had never had skin or soft tissue infections or MRSA before visiting Bare Escentuals Polaris. (*Id.* at 42.) Relying on this information, plus his extensive research on MRSA and experience clinically treating the infection, his knowledge of MRSA

transmission, the location of Ms. Kelly's infection, and the temporal proximity between Ms. Kelly's visit to Bare Escentuals and contraction of MRSA, Dr. Stevenson "was able to conclude to a reasonable degree of medical probability" that the most likely source of Ms. Kelly's MRSA was her September 22, 2012 visit to Bare Escentuals. (Doc. 47 at 7; *see also* Doc. 40 at 20, 50, 64, 72, 74–75, 82.)

In addition to Dr. Stevenson, Plaintiffs' infectious disease expert, Dr. Larry Rumans, opined that the most likely source of Ms. Kelly's MRSA was her visit to Bare Escentuals. (*See* Doc. 47, Ex. 6.) Dr. Rumans reached his opinion based on his knowledge of MRSA transmission, and after reviewing professional literature on MRSA and Ms. Kelly's medical records and deposition testimony. (*See id.*; *see also* Rumans Dep., Doc. 41, at 16, 26, 43, 48–49, 59–60, 64.)

Neither Dr. Stevenson nor Dr. Rumans tested the makeup samples or brushes used during Ms. Kelly's makeover. As Bare Escentuals noted at oral argument, it would have likely been impossible for them to do so because, based on the foot traffic in the Polaris store, the samples used on Ms. Kelly that day would have been fully used by the end of the shift, and the brushes and applicators would have been washed at the end of the shift. Because Ms. Kelly did not develop a sty in her eye until several days after her visit to the Bare Escentuals Polaris location, and did not inform Bare Escentuals that she had contracted MRSA until at least one month after her visit, the potentially MRSA-infected materials would have been long gone.

## B. Procedural Background

In August 2014, Plaintiffs filed this lawsuit against Bare Escentuals in state court. (Compl., Doc. 2.) Bare Escentuals then removed the case to this Court, and Plaintiffs subsequently amended their complaint. (Doc. 3.) Plaintiffs seek damages for personal injury

3

(the MRSA infection), and Kevin Kelly brings a claim for loss of consortium. Bare Escentuals moves for summary judgment on both claims, and the motion is now ripe for adjudication.

## II. STANDARD OF REVIEW

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proof on both points. *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001). In determining whether this standard is met, the Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Crouch v. Honeywell Int'l, Inc.*, 720 F.3d 333, 338 (6th Cir. 2013). As always, this inquiry turns on "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The mere existence of a scintilla of evidence does not suffice to survive a motion for summary judgment; rather, there must be evidence on which a jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

## III. ANALYSIS

Bare Escentuals argues that, while Plaintiffs have proffered expert opinions that assert a causal relationship between Ms. Kelly's MRSA infection and her visit to the Bare Escentuals Polaris location, these opinions are inadmissible under *Daubert* because the experts "provided no scientifically reliable or valid basis for their opinions." (Doc. 44 at 1.) Accordingly, Bare Escentuals asserts, because Plaintiffs have presented no admissible evidence of proximate cause, it is entitled to judgment as a matter of law on Plaintiffs' claims.

Under Federal Rule of Evidence 702,

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, the Supreme Court explained that district courts have a "gatekeeping role" under the Rules of Evidence, noting that "the trial judge must ensure that any and all scientific testimony admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). As a gatekeeper, the trial court "is imbued with discretion in determining whether or not a proposed expert's testimony is admissible, based on whether it is both relevant and reliable." *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 429 (6th Cir. 2007). One such way for a court to make this determination is to examine the expert's testimony in relation to the following factors set forth by the Supreme Court:

> (1) whether a theory or technique . . . can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* The *Daubert* factors "do not constitute a definitive checklist or test." *Id.* at 430. Rather, "the gatekeeping inquiry must be tied to the facts of a particular case"; it is a "very flexible inquiry." *Id.* Indeed, they should be applied "only where they are reasonable measures of the reliability of expert testimony." *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 683 (6th Cir. 2010) (Martin, J., dissenting); *see also Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 470 (6th Cir. 2004) ("A district

5

court does not err in failing to mention the *Daubert* factors when they are not pertinent to assessing the reliability of a particular expert."). The proponent of the expert testimony must demonstrate its reliability by a preponderance of the evidence. *See Wellman v. Norfolk & W. Ry. Co.*, 98 F. Supp. 2d 919, 923 (S.D. Ohio 2000) (citation omitted).

Bare Escentuals argues that the opinions of Drs. Stevenson and Rumans fail to meet the strictures of *Daubert* because they rely "solely on a temporal relationship between [Ms. Kelly's] infection and her visit to Bare Escentuals" rather than examining all of Ms. Kelly's potential MRSA exposure sources and completing a full medical assessment. (*See* Doc. 44 at 9.) Specifically, Bare Escentuals contends that the opinions proffered by Plaintiffs' experts are unreliable because the experts failed to consider key facts or possibilities such as: (1) Ms. Kelly's several MRSA "recurrences" after receiving "decolonization" treatment, which suggest that she was being continually re-exposed to MRSA through an unidentified source; (2) Ms. Kelly's significant medical history, which included approximately 41 hospital or emergency room visits during the two years before she visited Bare Escentuals; (3) Plaintiffs' membership at the YMCA; (4) Plaintiffs' ownership of pets that may have been infected with or carriers of MRSA; (5) the fact that Mr. Kelly was never tested for MRSA or appropriately decolonized as recommended by Ms. Kelly's doctors; and (6) the fact that Plaintiffs may have been asymptomatic MRSA carriers for lengthy periods of time prior to Ms. Kelly's active MRSA infection. (*See id.* at 6.)

For these reasons, Bare Escentuals argues that "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Bare Escentuals likens this case to *Rolen v. Hansen Beverage Co.*, in which the Sixth Circuit affirmed summary judgment after excluding expert testimony about causation that failed to meet

the *Daubert* threshold. 193 F. App'x 468 (6th Cir. 2006). The *Rolen* plaintiff got sick and went to the hospital about 20 minutes after drinking a juice box. Plaintiff's expert, Dr. Houston, opined that the plaintiff most likely had food poisoning or some other bacterial infection from ingesting the juice. *See id.* at 470. Dr. Houston reached this conclusion despite not having tested the juice box, not being aware of any others who had gotten food poisoning from the same type of juice, and not being able to explain the rapid onset of the plaintiff's food poisoning. *See id.* at 470–71. The Sixth Circuit affirmed the district court's exclusion of Dr. Houston's testimony under *Daubert*, finding that he had reached his conclusion without "supporting reason or methodology," and that it was "based less on a reasonable chain of evidence than on speculation solely from the absence of another obvious cause." *Id.* at 473–74. While Bare Escentuals is correct that here, like in *Rolen*, Plaintiffs' experts did not test the makeup samples from the store or the makeup brushes in Kami's belt, they were unable to do so. As set forth above, Bare Escentuals conceded at oral argument that these objects were in its control, and that it would have been virtually impossible for either party to test them for MRSA given the timing of Ms. Kelly's infection.

Plaintiffs rely primarily on *Sofillas v. Carnival Corp.*, No. 14-23920, 2016 WL 5416136 (S.D. Fla. Apr. 13, 2016) & 2016 WL 5416136 (S.D. Fla. July 8, 2016), to support their argument that the opinions of Drs. Stevenson and Rumans satisfy *Daubert*. In *Sofillas*, the court permitted a physician to testify within a "reasonable degree of scientific certainty" what he believed to be the most likely source of a plaintiff's MRSA infection, which he contracted after using the hot tub aboard a cruise ship. *Sofillas*, 2016 WL 5407889, at *3. The court allowed this testimony even though the expert witness did not conduct an "epidemiological study" of the hot tub. *Sofillas*, 2016 WL 5416136, at *3. The expert did not conduct such a study because the

7

cruise line did not grant him access to the hot tub and the water that was present in the hot tub at the time was gone. *Id.* The *Sofillas* court noted that defendant's objections to the expert testimony went to its credibility, not its admissibility. *Id.*

So too here. While Plaintiffs' experts were unable to access the potentially infected materials from Bare Escentuals and culture them for MRSA, they relied on their professional knowledge of and clinical experience treating MRSA, Ms. Kelly's medical history, the location of Ms. Kelly's infection, and the temporal relationship between Ms. Kelly's visit to Bare Escentuals and her outbreak to opine that her makeover at Bare Escentuals was the most probable source of her MRSA infection. While Bare Escentuals certainly raises valid points about the information that Plaintiffs' experts may *not* have considered, this is a credibility—not an admissibility—issue. The reliability of the expert testimony would best be fleshed out through "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof," rather than at summary judgment. *See id.*

In its reply brief, Bare Escentuals relies on *Tamraz v. Lincoln Elec. Co.*, 620 F. 3d 665 (6th Cir. 2009). In *Tamraz*, there was no question that the plaintiff suffered from Parkinson's Disease, but the cause was unknown. The plaintiff's expert opined that plaintiff's Parkinson's was "manganese-induced parkinsonism," but the Sixth Circuit held that his opinion was speculative, because, while the expert showed how "manganese *could cause* Parkinson's disease in someone like Tamraz," he did not show that it "*did cause* Tamraz's Parkinson's disease." *Id.* at 670–71 (emphasis in original). In other words, the expert in *Tamraz* never explained how the plaintiff's particular case of Parkinson's stemmed from manganese exposure. *Id.* at 671. And while a "rule-in/rule-out reasoning process for etiology as well as diagnosis" is permitted by the

Sixth Circuit, when efforts to rule in or out a cause of a disease are based purely on speculation, the testimony does not satisfy FRE 702. *See id.* at 674.

Here, like the expert in *Tamraz*, both of Plaintiffs' experts cite the temporal relationship between Ms. Kelly's visit to Bare Escentuals and her MRSA outbreak to establish causation. Unlike the *Tamraz* expert, however, the opinions of Plaintiffs' experts are based on more than just their feeling that the products, tools, and procedures utilized at Bare Escentuals during Ms. Kelly's makeover "seem[] [to be] the most likely explanation" for her MRSA infection. *Id.* at 670. Despite the one-sentence statements in their reports that their conclusions are based largely on the timing of Ms. Kelly's visit and MRSA outbreak, Plaintiffs' experts testified in their depositions that their opinions were also based on their extensive experience treating MRSA, familiarity with the bacteria's transmission, the location of Ms. Kelly's infection, and Ms. Kelly's medical history.

"Rule 702 . . . does not require anything approaching absolute certainty. " *Id.* at 671. Where one party sees speculation, another sees knowledge, "which is why the district court enjoys broad discretion over where to draw the line." *Id.* at 672. The Court finds that the opinions of Plaintiffs' expert witnesses rise above the level of speculation for purposes of admissibility. The issues that Bare Escentuals raises go to credibility, which can be evaluated by a jury after Bare Escentuals' own expert witness testifies and Plaintiffs' expert witnesses are cross examined.

### IV. CONCLUSION

For all of these reasons, Bare Escentuals' motion is **DENIED**.

**IT IS SO ORDERED**.

9

                                                **s/ Algenon L. Marbley**
                                              **ALGENON L. MARBLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: September 15, 2017**